UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES LESLIE, | ) | CASE NO. 1:12-CV-00860 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 13).

The issue before the undersigned is whether the final decision of the Commissioner of Social

Security (the "Commissioner") denying Plaintiff James Leslie's application for Disability

Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423,

and Supplemental Security Income pursuant to Title XVI of the Social Security Act, 42 U.S.C. §

1381 *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On August 24, 2007, Plaintiff James Leslie ("Plaintiff" or "Leslie") applied for Disability

Insurance Benefits and Supplemental Security Income alleging that he became disabled on

January 1, 2006, due to suffering from diabetes mellitus with associated peripheral neuropathy,

tendonitis, and depression.  (Tr 83, 87).  Leslie's application was denied initially on January 29,

2008, and again on reconsideration on October 2, 2008.  (Tr. 83, 87, 93, 97).  The Social Security

Administration subsequently granted Plaintiff's request for a hearing before an Administrative

Law Judge.  (Tr. 108).

On September 20, 2010, an Administrative Law Judge (the "ALJ") convened a video hearing to evaluate Plaintiff's application. (Tr. 10). Plaintiff, represented by counsel, testified at the hearing. (*Id.*). Vocational expert Bruce Holderead (the "VE"), also testified at the proceeding. (*Id.*).

On October 5, 2010, the ALJ issued her decision and determined that Plaintiff was not disabled. (Tr. 10). Following this decision, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr.1). The council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (*Id.*). Plaintiff now seeks judicial review of the Commissioner's final decision denying his application for benefits. Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff, born on November 1, 1956, was forty-nine years old on the alleged disability onset date. (Tr. 79). Plaintiff completed high school and had some electronic vocational training (Tr. 62-63). He has past experience working as a fund raiser, retail store manager, retail sales assistant manager, material handler, and a fiberglass bonding machine tender. (Tr. 67-71).

A. <u>Relevant Medical History</u>

1. <u>Plaintiff's Physical Impairments</u>

Prior to the alleged disability onset date of January 1, 2006, Plaintiff was treated by Dr. Harris Freedman for chronic left medial epicondylitis, chronic back pain, diabetes mellitus, and peripheral neuropathy. (Tr. 229-246). On referral, Plaintiff was further treated for his back pain, epicondylitis, and right sciatica by orthopedic surgeon Dr. Michael A. Retino. (Tr. 247). In September 2006, after the alleged disability onset date, Plaintiff received emergency room treatment for diabetes-related foot blister, pain and weakness with impaired gait (Tr. 273, 275).

Bilateral foot X-rays revealed no bony abnormalities, nor evidence of fracture or osteomyelitis. (Tr. 279).

Plaintiff was subsequently treated by Dr. Daniel C. Modarelli in November 2006, who became Plaintiff's treating physician for his physical ailments.   (Tr. 328-332, 390).   Dr. Modarelli treated Plaintiff for knee and elbow pain in November 2006, at which time the doctor noted Plaintiff's neuropathy and depression, and that his depression medication was not working. (Tr. 333, 335). Plaintiff's check-up examinations with Dr. Modarelli in January and October of 2007 indicated no positive findings.  (Tr. 331-332).  Dr. Modarelli treated Plaintiff in February 2008 for left elbow tendonitis (Tr. 329-330).  X-rays in July 2008 showed in his knees spurring of tibial spines bilaterally, with no fracture, dislocation, foreign bodies, periosteal reaction, or suprapatellar effusion, and normal elbows.  (Tr. 391-392).  Reports from March 2009, March 2010, and August 2010 show Plaintiff's complaints of knee, hip, and elbow pain, and feet and leg cramps, with positive findings of joint swelling and pain, weakness, and back pain.  (Tr. 538, 541, 543). The August 2010 report included an assessment of diabetes mellitus, osteoarthritis of the knee, and limb cramp.  (Tr. 538).

Dr. Modarelli completed a medical assessment in March 2009, finding the following limitations apply to Plaintiff:  Plaintiff can lift/carry five pounds; stand, walk, and sit for two to four hours in an eight-hour workday, for thirty minutes to an hour without interruption; can rarely or never climb, crouch, kneel, and crawl, and can occasionally balance and stoop; can occasionally perform gross manipulation but rarely or never utilize fine manipulation; can occasionally reach, handle, feel, push or pull; needs additional rest periods during an eight-hour workday; has environmental restrictions involving heights, moving machinery, temperature extremes, chemicals, dust, noise, and fumes; needs an at-will sit/stand option; and experiences

3

moderate pain.  (Tr. 450-451).  His report indicated Plaintiff has not been prescribed a cane, walker, brace, or TENS unit.  (*Id.*).  Dr. Modarelli did not include any medical findings in support of his assessment.  (*Id.*).

State Agency physician James Gahman, M.D., reviewed Plaintiff's medical records in January 2008 and determined that, despite diminished sensation in his lower extremities, Plaintiff was capable of medium work that involved only occasional balancing and climbing.  (Tr. 317).  In making this determination, Dr. Gahman considered that Plaintiff had no open wounds on his feet, had normal feet X-rays, and that his file from Plaintiff's 2007 claim indicated normal vision, good strength, normal gait and station, and a full range of motion in all extremities.  (Tr. 318).

On request of the state, a physical consultation was performed on Plaintiff by Dr. Adi Gerblich.  Dr. Gerblich's findings included problematic knees and elbows, underlying hypertension and diabetes, and limited walk although with the ability to walk three blocks to get groceries.  (Tr. 378).  He also found Plaintiff to be obese, with no deep tendon reflexes elicited in his upper or lower extremities and no response to Babinski reflex, but normal back and no peripheral edema.  (*Id.*).  Additionally, Dr. Gerblich reported adequate muscle power in both Plaintiff's upper and lower body, and normal range of motion in all extremities.  (*Id.*).  In summary, Dr. Gerblich found that Plaintiff is still mobilizing despite diabetes mellitus complicated by neuropathy, and that the etiology of Plaintiff's tendonitis is "unclear."  (*Id.*).

## 2. Plaintiff's Mental Impairments

Plaintiff also sought regular treatment from his treating psychiatrist, Dr. Ruth Martin, and community supportive treatment specialists.  His treatment included a variety of anti-depressant medication and counseling.  Throughout his therapy Dr. Martin noted Plaintiff's complaints of

4

depression, moodiness and a lack of motivation, stemming from financial problems and problems with his living situation, frustration with the government, as well as ongoing family problems involving his children and his ex-wife.  (Tr. 454-471).  Physical medical ailments are mentioned in some of Dr. Martin's Psychiatric Progress Notes, as diagnosed by Dr. Modarelli.  (Tr. 459, 462).  Throughout his treatment, Plaintiff denied delusions and hallucinations, self-abuse and aggressive behavior, showed logical thought processes, and was determined to suffer from "moderate" mental illness. (Tr. 345, 350, 351, 357).

Dr. Martin completed three separate medical opinion statements.  In the first, dated June 2008, Dr. Martin opined Plaintiff has a "fair" ability to follow work rules, use judgment, maintain attention and concentration for extended periods, respond appropriately to changes in routine settings, function independently without supervision, work with others without distraction, and understand, remember, and carry out complex, detailed, and simple job instructions.  (Tr. 383-384).  She also found Plaintiff had "poor" or no ability to maintain regular attendance or be punctual, deal with the public, relate to co-workers, interact with supervisors, deal with work stress, or complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*).  Dr. Martin notes the reasoning for the "poor" finding for this last category is "due to pain."   (*Id.*).  She also determined Plaintiff to have "fair to poor" ability to behave in an emotionally stable manner or relate predictably in social situations, and to have "good" ability to manage his own funds/schedules, and to leave home on his own.  (*Id.*).

In April 2009, Dr. Martin filled out another medical opinion statement, this time finding Plaintiff had "good" ability to understand, remember, and carry out complex job instructions, and follow work rules; "fair" ability to maintain appearance and relate predictably in social

5

situations; and now had "poor" to no ability to function independently without special supervision, manage his own funds/schedules, and to leave home on his own. (Tr. 452-453). On this report Dr. Martin offers as support for her findings that Plaintiff "has severe medical problems compounded by chronic depression." (*Id.*). A third assessment was completed in September 2010 contained the same findings, and noted that Plaintiff suffered from "chronic depression with severe family issues and chronic medical problems and pain." (Tr. 536-537).

Dr. Leslie Rudy completed a Mental Residual Functional Capacity Assessment on January 7, 2008. Dr. Rudy found Plaintiff to suffer from depression, and found moderate limitations on Plaintiff's following abilities: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without distraction, complete normal workdays and weeks without interruption from psychological based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and criticism from supervisors, and respond appropriately to changes in a work setting. (Tr. 298-299, 305). Dr. Rudy further noted that, although Plaintiff is a "loner" that doesn't get together often with family or friends, his attention, concentration and persistence is not impaired and he is able to live alone and take care of himself. (Tr. 300). In addition, Plaintiff's ability to withstand the stress of day-to-day activities is moderately impaired and has many Global Assessment Functioning (GAF) scores of 70. (*Id.*). Further, Dr. Rudy opines that Plaintiff's allegations are only partially consistent with medical evidence, and his allegation of severity is not supported, citing Plaintiff's reports of stability, high GAF levels, and no reported symptoms. (*Id.*). Dr. Rudy's findings were affirmed by Dr. Karen Stailer-Steiger, a state agency psychologist. (Tr. 376).

6

## II.  ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law.  At step one of the five-step sequential analysis,[1] the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2009.  (Tr. 12).  At step two, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2006.  (*Id.*).  At step three, the ALJ ruled that Plaintiff suffered from the following severe impairments:  diabetes mellitus with peripheral neuropathy, obesity, degenerative joint disease of the knees, and a depressive disorder.  (Tr. 13)  She further found Plaintiff suffers from the following non-severe impairments:  high cholesterol, hypertension, and a vision problem that does not interfere with Plaintiff's activities of daily living.  (*Id.*).  At step four, the ALJ

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

7

determined that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).  Based upon these findings, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light and sedentary work as defined in 20 C.F.R. § 404.1567(a), (b) and 416.967(a), (b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit a total of four hours in an eight-hour period; can stand and/or walk a total of four hours in an eight-hour period; must alternate positions after one hour for one to three minutes, but can remain at his workstation; can perform occasional postural including climbing, balancing, stooping, kneeling, crouching, and crawling; can perform gross handling and reaching but can rarely perform fine manipulation such as buttoning and using a keyboard; can perform multi-step tasks that are repetitive and have few changes; and can have superficial and occasional interaction with others. (Tr. 15).  Accordingly, at step four, the ALJ found Plaintiff is unable to perform any of his past relevant work (Tr. 18).  At the fifth and final step in the analysis, the ALJ, considering the claimant's age, education, work experience, and RFC, and based on the testimony of a vocational expert, found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 18-19).  Based on the forgoing, the ALJ determined Plaintiff has not been disabled pursuant to the Social Security Act from the alleged onset date of January 1, 2006. (Tr. 19).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

8

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V.  ANALYSIS

Plaintiff seeks review from the Court based on the argument that the ALJ improperly weighed the opinions of Plaintiff's treating physicians, Dr. Daniel Modarelli and Dr. Ruth Martin.

### A.  Treating Physicians

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(c)(2).  Opinions from such physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Id.*

When an ALJ determines a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion.  *Id.* Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id.*

Plaintiff contends that the ALJ erred by assigning significant weight to, and adopting, only a portion of Dr. Modarelli's opinion, and assigning little weight to Dr. Martin's opinion.

10

(Tr. 17).   However, based on the following analysis, the ALJ's decision is supported by substantial evidence and Plaintiff's assertion of error has no merit.

### 1.  Dr. Daniel Modarelli

Plaintiff was treated by Dr. Daniel C. Modarelli for a number of years after the alleged onset date of disability of January 1, 2006, following his diagnosis and treatment from Dr. Freedman.   Dr. Modarelli treated Plaintiff predominantly for diabetes mellitus, peripheral neuropathy, and pain of the lower extremities and elbows.  He also occasionally changed and refilled prescriptions for Plaintiff for both his physical and mental ailments.

Of particular relevance is a medical opinion form completed by Dr. Modarelli on March 25, 2009.  (Tr. 450-451).  In the report, Dr. Modarelli opined that Plaintiff can lift only five pounds occasionally and frequently; stand and walk without interruption between thirty minutes and one hour for a total of two to four hours in an eight hour day; sit without interruption between thirty minutes to one hour for a total of two to four hours in an eight hour day; rarely climb, crouch, kneel, and crawl; occasionally balance and stoop; occasionally reach, handle, feel, push/pull, and perform gross manipulation but only rarely perform fine manipulation; and requires a sit/stand option.  (*Id.*).  Dr. Modarelli did not include any medical findings in support of his assessments in this report.  (*Id.*).

The ALJ assigned "significant weight" to, and largely adopted, the majority of Dr. Modarelli's opinion regarding Plaintiff's abilities.   (Tr. 17).   However, the ALJ rejects the portion of Dr. Modarelli's opinion regarding Plaintiff's inability to lift only five pounds and rarely climb, crouch, kneel and crawl.  (*Id.*). Though opinions from a claimant's treating source are of particular relevance, such opinions are not automatically entitled to controlling weight if not supported by objective medical evidence or if the findings are inconsistent with other

11

substantial evidence in the record.  20 C.F.R. §§ 404.1527(c), 416.927(c).  "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Wilson*, 378 F.3d at 544 (citing SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  Plaintiff contends the ALJ did not give good reasons for not giving Dr. Modarelli's full opinion controlling weight.

The ALJ provides sufficiently specific reasons for her decision to reject the portion of Dr. Modarelli's opinion limiting Plaintiff to lift only five pounds and to rarely climb, crouch, kneel, and crawl.  Here, the ALJ determined that this portion of Dr. Modarelli's findings was not entitled to complete deference because the record did not contain objective medical evidence to support such severe limitations, and evidence on the record suggested Plaintiff is capable of lifting up to twenty pounds occasionally and at least occasionally capable of climbing, crouching, kneeling, and crawling.  (Tr. 17).  In particular, the ALJ refers to claimant's "activities of daily living," referred to in the decision as bathing and dressing himself, performing some household chores, swimming, shopping, walking, and using public transportation. (Tr. 14, 16, 17). The ALJ's finding Plaintiff as generally having "at most a mild restriction in his daily living activities" supports the weight given to Dr. Modarelli's opinion. (Tr. 14).

Additionally, Plaintiff points to no evidence on the record to contradict the ALJ's ruling that no objective medical evidence supports the severe limitations prescribed by Dr. Modarelli. Dr. Modarelli does not provide any medical support in his report.  (Tr. 450-451).  The ALJ cites to numerous medical findings that show some complications, but otherwise no restrictions in

12

mobility and range of motion of Plaintiff's back and extremities.  (Tr. 17).  The ALJ cites to reports of Drs. Gahman, and Freihofner, who found Plaintiff capable of performing medium work, and Dr. Gerblich, who observed normal strength and full range of motion of Plaintiff's back and extremities, no muscle atrophy or spasms, and no peripheral edema, and notes that, despite Plaintiff's neuropathy, he is still capable of mobilizing.  (Tr. 17, 377-378).  The ALJ further acknowledges that knee X-rays from July 2008 reveal tibial spurring, but show no other abnormalities, and elbow X-rays showed normal results.  (Tr. 17, 396-397).

Plaintiff contends that the ALJ "conveniently" omits findings from the report of Dr. Gerblich that otherwise support the rejected portion of Dr. Modarelli's opinion.  While it is true that the ALJ's decision does not specifically mention the decreased sensation and absent reflexes of Plaintiff's lower extremities listed in the report,   the relevant overall findings of Dr. Gerblich are indeed pointed out by the ALJ, namely that Plaintiff has good muscle tone and full range of motion in his spine and extremities, and that he is still capable of mobilizing.  (Tr. 17, 377-378). The ALJ properly weighed the evidence presented in drawing her conclusion.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284-85 (6th Cir. 2009) (finding no improper "cherry picking" where ALJ properly weighed the evidence presented in Plaintiff's treatment records).

In sum, it was reasonable for the ALJ to reject this portion of Dr. Mordarelli's opinion. The ALJ properly applied the Treating Physician Rule and considered the requisite factors in assigning "significant weight" to most of Dr. Modarelli's opinion, while rejecting the portion suggesting severe limitations of Plaintiff's lifting and climbing, crouching, kneeling, and crawling abilities.   The ALJ further provided sufficiently specific reasons to support her conclusion, which was supported by substantial evidence on the record.

2. Dr. Ruth Martin

13

Plaintiff saw Dr. Martin for issues surrounding his depression regularly since 2006.  In her assessments, she determined Plaintiff had fair to poor abilities in activities related to intellectual functioning, making occupational adjustments, and making personal and social adjustments, with some improvement between the first, and the second and third assessments. (Tr. 383-385, 452-453, 536-537).  The assessments provided by Drs. Rudy and Stailer-Steiger give more optimistic assessments of Plaintiff's abilities in these areas.  (Tr. 298-300, 376, 398).

The ALJ assigned "little weight" to the opinion of Dr. Martin.  A treating physician's opinion is not entitled to controlling weight where, as here, the ALJ determines that evidence in the record undermines the opinion.  (Tr. 18).  20 C.F.R. §§ 404.1527(c), 416.927(c).  In applying the factors laid out in the regulations, the ALJ determines little weight is appropriate because (1) Plaintiff's therapy with Dr. Martin focused on his situational problems rather than the symptoms of his depression, (2) Dr. Martin's assessments are inconsistent with his reported daily activities, and (3) the two later assessments included Plaintiff's physical impairments, while the evidence provides no indication that Dr. Martin was informed of his physical health condition by his other treating physicians.  (Tr. 18).

Plaintiff argues the ALJ's reasons for assigning little weight to Dr. Martin's opinion are in error.  First, Plaintiff argues that it is "absurd" for the ALJ to imply that Dr. Martin can treat Plaintiff for depression without dealing with his situational problems which have a direct bearing on his mental health, such as his living and family problems.  However, Plaintiff misinterprets the ALJ's underlying concern involved with this reason.  The ALJ does not imply that Plaintiff's life factors have no bearing on his mental health.  Rather, the determination is based on the evidence presented showing that Plaintiff's counseling sessions with Dr. Martin focused only on

14

finding solutions for these situational factors, and did not provide counseling directed at treating Plaintiff's *symptoms* of depression.  (Tr.17-18, 344-375).

The ALJ's second reason is similarly reasonable and supported by substantial evidence. The ALJ states that the limitations presented by Dr. Martin are in conflict with Plaintiff's reported daily activities, including shopping, dealing with his family and public housing issues, and using public transportation.  (Tr. 18).  Earlier in her decision, the ALJ also references attending appointments and swimming at the YMCA in Plaintiff's daily living activities.  (Tr. 14).  A reasonable person could find, as did the ALJ, that Plaintiff's activities shown in the record undermine the harsh limitations on Plaintiff's intellectual, occupational, social and personal functioning presented by Dr. Martin's assessments.  Thus, Plaintiff's argument that the ALJ's daily activities rationale has no support is without merit.

The ALJ's third stated reason is also substantiated by the evidence.  The ALJ discounts Dr. Martin's findings based on her inclusion of Plaintiff's physical impairments in her assessments.  In evaluating Dr. Martin's specialization as a psychiatrist, and the nature of her treatment relationship with Plaintiff as one dealing only with his mental health, the ALJ reasonably finds that Dr. Martin's inclusion of Plaintiff's physical health in her assessments discredits her opinion.  As stated in her decision, the ALJ points out that "[Dr. Martin] is only involved in the claimant's mental health treatment.  There is no indication that she is kept informed about his physical health by the claimant's other treating physicians."  (Tr. 18).  Any information on his physical impairments is based on what Plaintiff told her, and is not based on Dr. Martin's medical examination of his physical impairments.  Given the treatment relationship between Dr. Martin and Plaintiff as presented in the record, as well as the ALJ's finding that

Plaintiff's account of his own symptoms lack credibility, the ALJ's findings are not in error.  (Tr.

16).

VIII.  <u>DECISION</u>

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge

Date:  <u>April 9, 2013</u>.